### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MAINE

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY ) | |
| COMMISSION,                         ) | |
|                                     ) | |
|         Plaintiff,                  ) | CIVIL ACTION NO. |
|                                     ) | |
|     v.                              ) | **COMPLAINT** |
|                                     ) | |
| HIRSCHBACH MOTOR LINES, INC.        ) | JURY TRIAL DEMAND |
|                                     ) | |
|         Defendant.                  ) | |
| _____ ) | |

NATURE OF THE ACTION

This is an action under the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.* ("ADA")*,* as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110–325, 122 Stat 3553 (2008), and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981a, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to a group of individuals who were affected by such practices ("Aggrieved Individuals").  The United States Equal Employment Opportunity Commission ("EEOC" or "Commission") alleges that Defendant Hirschbach Motor Lines, Inc. ("Hirschbach" or "Defendant"), since at least 2013 and continuing through to the present, has applied a policy or practice that discriminates against a class of persons who are individuals with disabilities as defined by the ADAAA by: (1) using a qualification standard/test that screens out or tends to screen out individuals with disabilities or a class of individuals with disabilities and that is not job-related for the position in question and consistent with business necessity; and (2) refusing to permit employees with physical limitations, injuries, or medical conditions, who could perform the essential functions of their job with or without a reasonable accommodation, to work unless they are 100% healed and without restrictions.

## JURISDICTION AND VENUE

1.Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345.  This action is authorized and instituted pursuant to Section 107(a) of the ADA, as amended, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3); and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.The practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Maine.

## PARTIES

3.Plaintiff, the United States Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA, and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4.At all relevant times, Defendant has continuously been an Iowa corporation, doing business throughout the United States, including the State of Maine, and employing at least fifteen (15) employees.

5.At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 101(2) of the ADA, 42 U.S.C. § 12111(2), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) & (h).

6.At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

7. Hirschbach is a nationwide truck transportation service engaged in domestic interstate commerce transportation.

8. Hirschbach employs approximately 220 office and shop employees and has a fleet of over 950 trucks and 1,500 trailers. Hirschbach represents that 99% of its driving positions are "no touch freight" positions.

9. Hirschbach's drivers transport goods throughout the United States.

## ADMINISTRATIVE PROCEDURES

10. More than 30 days prior to the institution of this lawsuit, Michael Cote filed a dual Charge of Discrimination with the EEOC and with the Maine Human Rights Commission (MHRC) alleging violations of the ADA by Defendant.

11. After concluding its investigation, the MHRC transferred the file to the EEOC on March 30, 2015, and the EEOC commenced an investigation.

12. On April 25, 2017, the EEOC issued to Defendant a Letter of Determination finding reasonable cause to believe that Defendant violated the ADA and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

13. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

14. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

15. On June 22, 2017, the Commission issued to Defendant a Notice of Failure of Conciliation.

16. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

17. Since at least 2013, Defendant has discriminated against Aggrieved Individuals who are, or whom Defendant regards as being, disabled, in violation of the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.* ("ADA"), as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110–325, 122 Stat 3553 (2008).

18. The Aggrieved Individuals are individuals who had impairments that either substantially limit one or more of their major life activities, had a record of such an impairment, and/or whom Defendant regarded as being disabled. All Aggrieved Individuals are individuals who, at the time of the wrongful conduct, possessed a Department of Transportation medical certification, authorizing them to operate a commercial motor vehicle. The Aggrieved Individuals are persons who applied for work as an over-the-road (OTR) truck driver and/or were employed as an OTR truck driver with Defendant. Accordingly, they are qualified individuals with disabilities within the meaning of the ADA who could perform the essential functions of an OTR truck driver at the time Defendant applied its pre-employment qualification standard/test or its 100% healed policy. The Aggrieved Individuals were not hired or were fired because they were, or Defendant regarded them as being, disabled.

19. Defendant requires job candidates who have already received conditional offers of employment to submit to a pre-employment examination that it describes variously as a "Back Screen," "Back Assessment," and/or a "Lifting Assessment" (hereafter "the Back Assessment"). As part of that the Back Assessment, Defendant requires applicants for work as "no-touch freight" OTR truck drivers to perform tasks that include:

      (i)     range of motion in the neck, shoulder, elbow/wrist/hand, ankle and back,
      (ii)    strength in the upper extremities, lower extremities, and grip,
      (iii)   the ability to balance and stand on one leg,
      (iv)   touch toes while standing on one leg,
      (v)    climb and step up,
      (vi)   crawl,
      (vii)  squat,
      (viii) lift 25 lbs. and 50 lbs. overhead and from floor to waist.

20. Defendant uses the Back Assessment to identify and screen out job candidates with certain "pre-existing injuries and/or unrestricted medical conditions" who have received conditional offers of employment. The Back Assessment screens out or tends to screen out individuals with disabilities or a class of individuals with disabilities and is not job-related for the position in question and consistent with business necessity, in violation of the ADA. For example,

    a. As part of the Back Assessment, Darryl Zimmerle was asked to crawl 35 feet. Because he had had a hip replacement, he refused. He nonetheless showed how he performs a safety inspection of the truck without crawling. Hirschbach refused to hire him because he refused to crawl.

    b. As part of the Back Assessment, Jose Mejia failed the "Balance/Single Leg Stance" and "Single Leg Stance" portions because he was unable to balance on one leg and touch his toes. Hirschbach refused to hire him to be a truck driver because he was unable to touch his toes while standing on one leg.

    c. As part of the Back Assessment, Aldon Dixon failed what was listed as "Waist to overhead, 50lbs both hands, 5 reps." He was told that if he wanted to go on the lease program, he would not have to pass the Back Assessment. He was not hired even though lifting 50 pounds overhead is not a requirement of the no-touch-freight job he applied for.

5

  d. As part of the Back Assessment, Darlene Wynn failed the overhead lifting portion. She was not hired even though lifting 50 pounds overhead is not a requirement of the no-touch-freight job she applied for.

  e. As part of the Back Assessment, Ronald Ziobro failed what was listed as "Waist to overhead, 50lbs both hands, 5 reps." He was not hired even though lifting 50 pounds overhead is not a requirement of the no-touch-freight job he applied for.

21. All five of the Aggrieved Individuals listed above were denied employment because of their actual or perceived impairments.

22. All five of the Aggrieved Individuals listed above found comparable work as OTR truck drivers immediately or within weeks of their rejection by Hirschbach.

23. In addition, Hirschbach maintains a policy or practice that prohibits OTR truck drivers with an injury or impairment from working until they are 100% free of restrictions and limitations. For example,

  a. Michael Cote was employed as an OTR truck driver for Defendant when, in 2013, his physician restricted him to a 30-hour work week because of a shoulder impairment;

  b. This shoulder impairment substantially limited, among others, the major life activities of lifting, pushing and pulling;

  c. Defendant refused to engage in the interactive process with Cote and refused to provide the reasonable accommodation of a 30-hour work week requested by his physician;

  d. A 30-hour work was a reasonable request and supported by Cote's immediate manager;

  e.  Defendant also refused to provide Cote the reasonable accommodation of a leave of absence so that he could have surgery on his shoulder; and

  f.  Defendant nonetheless advised Cote that since his physician had imposed a restriction, Cote was terminated and could not seek to return to work with Defendant unless he was capable of working without any restrictions.

24.  Each of the unlawful employment practices complained of above was intentional.

25.  Each of the unlawful employment practices complained of above was done with malice or with reckless indifference to the Aggrieved Individuals' federally protected rights.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.  Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in disability discrimination against aggrieved persons, and from engaging in any employment practice that discriminates on the basis of disability.

B.  Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities and reasonable accommodations for qualified individuals with disabilities and that eradicate the effects of its past and present unlawful employment practices.

C.  Order Defendant to make the Aggrieved Individuals whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including instatement or reinstatement of the Aggrieved Individuals.

  D. Order Defendant to make the Aggrieved Individuals whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

  E. Order Defendant to make the Aggrieved Individuals whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above, including emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, in amounts to be determined at trial.

  F. Order Defendant to pay the Aggrieved Individuals punitive damages for the malicious and/or reckless conduct described above, in amounts to be determined at trial.

  G. Grant such further relief as the Court deems necessary and proper to the public interest.

  H. Award the Commission its costs of this action.

JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Dated: April 30, 2018

        JAMES L. LEE
        Deputy General Counsel

        GWENDOLYN YOUNG REAMS
        Associate General Counsel

        U.S. EQUAL EMPLOYMENT OPPORTUNITY
        COMMISSION
        131 M Street, N.E.
        Washington D.C. 20507

        JEFFREY BURSTEIN
        Regional Attorney
        33 Whitehall Street, 5th Floor
        New York, NY 10004-2112

        /s/Markus L. Penzel_____
        Markus L. Penzel
        Senior Trial Attorney
        EQUAL EMPLOYMENT OPPORTUNITY
        COMMISSION
        Boston Area Office
        John F. Kennedy Federal Building, Room 475
        Boston, MA 02203-0506
        (617) 565-3193
        Markus.Penzel@eeoc.gov